IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARTINO CARTIER** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **HSN, INC., HSNi, LLC,** | : | |
| **DOES 1-10 and QVC. INC.** | : | **NO. 23-87** |

### MEMORANDUM OPINION

**Savage, J.**                                                               **May 23, 2023**

### Introduction

Plaintiff Martino Cartier appeared on the Home Shopping Network (HSN)[1] selling wig and hair products on behalf of two vendors until HSN barred him from the air. He brought this action claiming that HSN defamed him and interfered with his contracts in an email to the vendors notifying them it was banning him for what it characterized as unwanted physical touching of team members and appearing intoxicated on the show.

HSN has moved to dismiss the Amended Complaint. It argues that Cartier has not alleged facts showing that HSN's statements were motivated by malice—a necessary element of a defamation claim brought by a public or a limited-purpose public figure.[2] It also contends the interference with contract claim necessarily fails because it rests on his deficient defamation claim.[3] Alternatively, it argues that Cartier fails to allege it acted improperly to sustain a tortious interference with contract claim.[4] Finally, it maintains he

---

[1] Defendants are television-based shopping networks Quality Value Convenience (QVC), the Home Shopping Network (HSN), and HSNi, LLC (HSNi). We refer to defendants collectively as HSN.

[2] Memo. of Law In Supp. of Def.'s Mot. to Dismiss Pl.'s Am. Compl. For Failure to State a Claim at 6, ECF No. 17-1 ["Mot. to Dismiss"].

[3] *Id.* at 12.

[4] *Id.* at 13-14.

has not alleged conduct that amounts to extreme or outrageous conduct to make out an intentional infliction of emotional distress claim.[5]

We conclude that Cartier, based on the allegations, is not a public figure and need not plead facts showing malice to state a defamation claim. He has stated a cause of action for tortious interference with contracts, but he has not stated a cause of action for intentional infliction of emotional distress. Thus, we shall grant the motion to dismiss in part and deny it in part.

**Facts**

For the purposes of considering the motion, we accept the facts as alleged in the Amended Complaint as true and draw all reasonable inferences from them in Cartier's favor. The facts are as follows.

Cartier was a host and presenter for hair brands on HSN for fifteen years until he was barred from appearing on the network on January 4, 2023.[6] He sold wigs, hair products, and accessories for large vendors, including Gabor Wigs and Capillus.[7]

On December 27 and 28, 2022, Cartier hosted television programs on HSN, promoting Gabor Wigs products.[8] During the programs, he "routinely hug[ged] his co-hosts and models," "touch[ed] the Gabor models' hair," and "occasionally made consensual, incidental contact with their necks and shoulders."[9] He also "effus[ed]" the show "with personal details of his life."[10]

---

[5] *Id.* at 16-17.

[6] Am. Compl. ¶¶ 16, 34, ECF No. 12.

[7] *Id.* ¶¶ 16, 38.

[8] *Id.* ¶ 25.

[9] *Id.* ¶¶ 29, 30

[10] *Id.* ¶ 28.

In a January 4, 2023 email, Dan Paulson, Senior Manager of On-Camera Talent at HSN, notified Cartier that HSN terminated its relationship with him and had advised Gabor Wigs and Capillus they had to replace him.[11] In his email to Gabor and Capillus, Paulson accused Cartier of violating company policies by "ma[king] unwanted physical contact with multiple HSN team members and exhibit[ing] signs of being intoxicated."[12] Paulson added that Cartier had been "warned about aspects of this behavior in the past."[13]

Cartier alleges that in addition to losing a lucrative contract with Capillus, his brand was diminished, "negatively affecting his income and curtailing his ability to earn future income […]."[14] He also claims to have suffered severe emotional distress.[15]

## Standard of Review

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

A conclusory recitation of the elements of a cause of action is not sufficient. *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). The plaintiff must allege facts

---

[11] *Id.* ¶ 34; Email from Dan Paulson to Martino Cartier, Jan. 4, 2023 (attached as Ex. B to Am. Compl.), ECF 12-2 ["Paulson Email"].

[12] Am. Compl. ¶ 35; Paulson Email.

[13] *Id.*

[14] Am. Compl. ¶¶ 41, 43.

[15] *Id.* ¶¶ 65.

necessary to make out each element. *Id.* (quoting *Twombly*, 550 U.S. at 563 n.8). In other words, the complaint must contain facts which support a conclusion that a cause of action can be established.

In considering a motion to dismiss under Rule 12(b)(6), we first separate the factual and legal elements of a claim, accepting the well-pleaded facts as true and disregarding legal conclusions. Then, we determine whether the alleged facts make out a plausible claim for relief. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679). All well-pleaded allegations in the complaint are accepted as true and interpreted in the light most favorable to the plaintiff, and all inferences are drawn in the plaintiff's favor. *See McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009) (quoting *Schrob v. Catterson*, 948 F.2d 1402, 1408 (3d Cir. 1991)).

## Analysis

### *Defamation: Public Figure*

HSN contends that Cartier is a public figure or, at least, a limited-purpose public figure.[16] Consequently, so they argue, to state a defamation claim, he must allege facts that show HSN made the statements about his on-air behavior with actual malice, and he has not done so.[17]

In *New York Times, Co. v. Sullivan*, the Supreme Court established the actual malice standard in defamation suits "brought by public officials against critics of their official conduct." 376 U.S. 254, 283 (1964). The standard requires the plaintiff to plead, and ultimately prove, that the publisher knew the alleged defamatory statement was false,

---

[16] Mot. to Dismiss at 7.

[17] *Id.* at 8.

or seriously doubted that it was true. *Id.* at 279-80; *see also Kendall v. Daily News Pub. Co.*, 716 F.3d 82, 89 (3d Cir. 2013). It later extended the reach of the standard to public figures, not just public officials, who are involved in a "particular public controversy." *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 345 (1974); *Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 154 (1967).

For the purposes of applying the *New York Times* malice standard, there are two types of public figures: an all-purpose public figure and a limited-purpose public figure. *Marcone v. Penthouse Int'l Mag. for Men*, 754 F.2d 1072, 1082 (3rd Cir.1985). The former is one in a position of "persuasive power and influence" and has achieved "such pervasive fame or notoriety that he becomes a public figure for all purposes and events." *Id.* (quoting *Gertz*, 418 U.S. at 345) (internal quotations omitted). The latter is "an individual [who] voluntarily injects himself or is drawn into a particular public controversy." *Id.* (quoting *Gertz,* 418 U.S. at 351). His involvement is confined to a particular public dispute. Both types must prove malice to prevail in a defamation action.

Although Cartier is a self-described "celebrity hairstylist" and "television personality," and despite "receiv[ing] myriad awards over his career," he has not achieved pervasive fame. He is not a "household name" such as an elected official, a Hollywood star, or a nationally recognized athlete. *Mzamane v. Winfrey,* 693 F. Supp. 2d 442, 498 n.25 (E.D. Pa. 2010) (citing *Schiavone Const. Co. v. Time, Inc.*, 847 F.2d 1069, 1077 (3d Cir.1988)). As alleged, he does not enjoy persuasive power and has not achieved fame and notoriety. He is not an all-purpose public figure.

Nor is he a limited-purpose public figure involved in a public dispute. What constitutes a public controversy is not always clear. *Marcone*, 754 F.2d at 1083 (quoting

5

*Waldbaum v. Fairchild Publ'n, Inc.,* 627 F.2d 1287, 1296 (D.C. Cir. 1980)). As the Third

Circuit Court of Appeals has articulated:

> Speech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public.

*Soobzokov v. Lichtblau*, 664 Fed. App'x 163, 169 (3d Cir. 2016) (quoting *Snyder v.*

*Phelps*, 562 U.S. 443, 453 (2011)).

In this case, the controversy was not a public one. The dispute was private. It

affected only the parties and Cartier's relationship with them. It did not involve the public.

The dispute was confined to an internal communication among four persons. Because

there was no public controversy, Cartier is not a limited-purpose public figure.

Because we conclude that Cartier was neither an all-purpose public figure nor a

limited-purpose public figure, he was not required to plead that HSN acted with actual

malice.

### *Tortious Interference with Contract*[18]

HSN argues that Cartier has failed to state a claim for tortious interference of

contract. First, it characterizes the claim as a repackaging of his defamation claim.[19] So,

because his defamation claim fails, his tortious interference claim does too. Second, HSN

argues that Cartier has failed to plead that it acted improperly.[20] It asserts that HSN had

---

[18] Defamation, tortious interference with contract, and intentional infliction of emotional distress are state causes of action. The parties agree there is no conflict of law issue and that the laws of all three states may be applied interchangeably. In his response, Cartier cites only to Pennsylvania law. Because there is no material difference in the relevant states' laws, we shall apply Pennsylvania law.

[19] Mot. to Dismiss at 11-12.

[20] *Id.* at 12-14.

a right to ban Cartier from its programming.[21] It maintains that it has a "First Amendment right to determine who and what appears on HSN's television shows."[22]

To state a cause of action for tortious interference with contract, a plaintiff must plead facts showing that: (1) the plaintiff and a third party had an existing contractual relationship; (2) the defendant purposely intended to harm the plaintiff by interfering with that contractual relationship; (3) the defendant acted in the absence of privilege or justification; and (4) the plaintiff suffered actual damage as a result of defendant's conduct. *Orange Stones Co. v. City of Reading*, 87 A.3d 1014, 1025 (Pa. Commw. Ct. 2014) (quoting *Pelagatti v. Cohen*, 536 A.2d 1337, 1343 (Pa. Super. Ct. 1987).

A defendant who interferes with a third party's performance of a contract in order to advance its "legally protected interest" does not act improperly. *Ruffing v. 84 Lumber Co.*, 600 A.2d 545, 548 (Pa. Super. Ct. 1991) (internal citations omitted). Whether HSN was motivated by an intent to harm Cartier or to protect its own interest is a question of fact for a jury to determine based on all the facts.

HSN's argument is in the nature of a defense. It invites us to view the videotapes of the December 28, 2022 program so that we can see Cartier's misbehavior that it contends justifies its terminating his relationship with HSN and advising Gabor Wigs and Capillus of the reason for barring him from appearing on its network. We decline to do so. We cannot make the factual call on a motion to dismiss. It is for the jury to make.

*Intentional Infliction of Emotional Distress*

To state a claim for intentional infliction of emotional distress, Cartier must allege

---

[21] *Id.* at 14.

[22] *Id.*

that: (1) the defendants' conduct was extreme and outrageous; (2) it was intentional or reckless; (3) it caused him emotional distress; and (4) the distress was severe. *Jordan v. Pa. State Univ.*, 276 A.3d 751, 775 (Pa. Super. Ct. 2022) (citations omitted).

HSN argues that Cartier fails to plead facts sufficient to support the "extreme and outrageous conduct" element. They maintain that sending the email stating the reasons they would no longer allow Cartier to appear on their network does not constitute extreme and outrageous conduct.[23]

Extreme and outrageous conduct is "beyond all possible bounds of decency," "atrocious," and "utterly intolerable in a civilized community." *Salerno v. Phila. Newspapers, Inc.*, 546 A.2d 1168, 1172 (Pa. Super. Ct. 1988) (citations omitted). Extreme and outrageous conduct is found "in only very egregious cases." *See Hoy v. Angelone*, 691 A.2d 476, 482-83 (Pa. Super. Ct. 1997) (collecting examples); *see also Salerno*, 546 A.2d at 1172 (collecting examples).

Paulson's email stating that Cartier made unwanted physical contact with team members and exhibited signs of being intoxicated in violation of company policy is not so extreme or outrageous to sustain a claim for intentional infliction of emotional distress. The Amended Complaint makes conclusory statements that defendants' conduct was "maliciously false," "designed to inflict maximum damage," an "assault on [his] reputation," "incomprehensible," and an "attempt[] to sabotage his reputation, livelihood and charitable endeavors."[24]

Whether the alleged conduct is extreme and outrageous may be determined as a

---

[23] *Id.* at 15-17.

[24] Am. Compl. ¶¶ 39, 40, 43, 44, 45.

matter of law. *Jordan*, 276 A.3d at 775; *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1274 (3d Cir. 1979). Cartier does not allege facts from which one could reasonably conclude that HSN's emailing his employers was "so outrageous in character, and so extreme in degree…to be regarded as atrocious." Restatement (Second) of Torts § 46 cmt. d (Am. L. Inst. 1965). HSN sent a single email to two vendors that employed Cartier. It did not broadcast its message publicly or send it to any person unrelated to the business relationship relating to Cartier's television appearances. Although the comments may have been insulting and embarrassing, they are not harassing, retaliatory, violent, or abusive. See *Hoy*, 720 A.2d at 152-53, Restatement (Second) of Torts § 46 cmt. d (Am. L. Inst. 1965). Therefore, we conclude that the alleged conduct does not rise to the level of extreme and outrageous.

Because Cartier has failed to allege facts showing extreme and outrageous conduct, his intentional infliction of emotional distress claim is legally insufficient.

## Conclusion

We shall deny the motion to dismiss Count I for defamation and Count II for tortious interference with contract. We shall grant the motion as to Count III for intentional infliction of emotional distress for failure to state a claim.